```
IN THE UNITED STATES DISTRICT COURT
   FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAULINE M. BAILEY,              :    No. 3:13cv3006
Administrator of the Estate     :
of Wesley Sherwood, Jr.,        :    (Judge Munley)
              Plaintiff         :
                                :
         v.                     :
                                :
B.S. QUARRIES, INC.;            :
DAMASCUS 535 QUARRY AND         :
STONE PRODUCTS, LLC.; TNT       :
ONE LIMITED PARTNERSHIP;        :
LIPPMANN MILWAUKEE, INC.;       :
LIPPMANN QUALITY USED           :
EQUIPMENT; VIRA                 :
CORPORATION; TIMOTHY            :
SMITH; AND/OR THOMAS            :
BOLLES,                         :
              Defendants        :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
```

# MEMORANDUM

Before the court for disposition is the motion for summary judgment filed by Defendants Lippmann Milwaukee, Inc., Lippmann Quality Used Equipment and Vira Corporation (hereinafter collectively "Lippmann Defendants") against Defendants B.S. Quarries, Inc., Damascus 535 Quarry and Stone Products, Inc., Damascus 535, TNT One Limited Partnership, Timothy Smith and Thomas

Bolles (hereinafter collectively "Quarry Defendants").[1] The motion has been fully briefed and is ripe for disposition.

**Background[2]**

This case arises from Wesley Sherwood's accidental death at the Lanesboro Quarry in Susquehanna County, Pennsylvania on December 15, 2011. Sherwood fell into a rock crusher manufactured by the Lippmann Defendants and died.

Wesley Sherwood, whose estate brought the instant suit, was twenty-two years old and worked as the operator of a rock crusher at the Lanesboro Quarry in Susquehanna County, Pennsylvania when he died.

Defendant B.S. Quarries owned and operated the Lanesboro Quarry at the time of the accident. Defendant Damascus 535 owned and operated a portable crushing plant at the Quarry. Defendant TNT Limited Partnership owned the land on which the Quarry was located. Defendant TNT Services Corp. owned trucks and operated as a trucking company that provides quarry-related services.

Defendants Thomas Bolles and Timothy Smith owned all of these companies jointly, with the exception of Damascus 535, which Defendant Smith

---

[1] The Quarry Defendants urge us to refrain from referring to them as the "Quarry Defendants" to avoid causing jury confusion. At this point we find it still convenient to use the term "Quarry Defendants". Of course, at the appropriate times during trial, all the defendants will be referred to separately.

[2] These background facts are well known to the parties and thus citations to the record have been omitted.

owned in its entirety. Defendant Smith was President and CEO of Damascus 535, and Defendant Bolles was Vice-President of B.S. Quarries.

The Lippmann Defendants manufactured and sold the rock crusher. The plaintiff asserts a product liability claim against the Lippmann Defendants and negligence claims against the Quarry Defendants. The Quarry Defendants and Lippmann Defendants filed crossclaims against each other.

At the close of discovery, the parties filed six motions for summary judgment, which we ruled upon on March 31, 2016. (Doc. 138, Memo of March 31, 2016; Doc. 139, Ord. of March 31, 2016). We granted summary judgment in favor of Defendant TNT Services Corp., and that entity is no longer a party. (Id.) We granted plaintiff's motion to pierce the corporate veil and held that B.S. Quarries and Damascus 535 are alter egos of Thomas Bolles and Timothy Smith. (Id.)

Subsequently, the court held a pretrial conference and set the case for trial on October 17, 2016. (Doc. 268, Order of Sept. 15, 2016). On October 14, 2016, the Third Circuit Court of Appeals issued a stay based upon an appeal filed by Defendant Damascus 535 Quarry and Stone Products, LLC. (Doc. 350, Third Cir. Ct. Order of Oct. 14, 2016). The Third Circuit issued its order on the appeal, and we lifted the stay in January 2017. The court held a status conference on

March 23, 2017. At the conference, a trial date of October 16, 2017 was scheduled, with jury selection to be held on October 11, 2017. (Doc. 362).

Recently, the plaintiff and the Lippmann Defendants have settled the product liability claim between themselves. (Doc. 378, Summ. Judg. Mtn. ¶ 10 (indicating that plaintiff and the Lippmann Defendants reached a settlement on August 28, 2017)).

As noted above, Quarry Defendants have asserted a crossclaim against the Lippmann Defendants. (Doc. 21). The crossclaim alleges: "[The Lippmann Defendants] are joined to protect the [Quarry Defendants'] rights of indemnity and/or contribution and the [Quarry Defendants] allege that the [Lippmann Defendants] are alone liable to the Plaintiff or, in the alternative are liable over to the [Quarry Defendants] or, in the alternative, are jointly and severally liable to the Plaintiff with the [Quarry Defendants], the existence of any liability on the part of the [Quarry Defendants] being denied." (Doc. 21, Crossclaim ¶ 5).

Subsequent to settling the case with the plaintiff, the Lippmann Defendants sought permission to file a summary judgment motion against the Quarry Defendants in light of the settlement. We granted permission, and the parties have briefed the motion, bringing the case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff Pauline M. Bailey is a citizen of New York. (Doc. 1, Compl. ¶ 1). The B.S. Quarries Defendants, including B.S. Quarries, Inc., Damascus 535 Quarry and Stone Products, LLC[1], and TNT One Limited Partnership and TNT Services Corp. (hereinafter, collectively, the "TNT Defendants") are citizens of the State of Pennsylvania with their principal places of business in Pennsylvania. (Id. ¶¶ 7-12). Defendants Timothy Smith and Thomas Bolles are both citizens of Pennsylvania. (Id. ¶¶14-15). Defendants Lippmann Milwaukee, Inc., Lippmann Quality Used Equipment, and Vira Corporation (hereinafter, collectively, the "Lippmann Defendants") are citizens of Wisconsin with their principal places of business in Wisconsin. Additionally, the amount in controversy exceeds $75,000. Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case. See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"). As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible

6

evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts with affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**Discussion**

The Lippmann Defendants move for summary judgment on the Quarry Defendants crossclaim. Their position is that the Quarry Defendants do not have any expert witness evidence to establish the product liability claim against the Lippmann Defendants. The deadline for producing expert reports has passed; and therefore, judgment should be granted to the Lippmann Defendants on the crossclaim. Plaintiff concurs in the motion for summary judgment. (Doc. 386, Corres. from Pl. counsel dated Sept. 25, 2017). After a careful review, we also agree with the Lippmann Defendants.

In the instant case, the court set the expert witness report deadline for plaintiff as April 14, 2015 and for defendants as June 15, 2015. (Doc. 73). The court provided these deadlines after several previous extensions, and we indicated on the scheduling order that "**NO FURTHER EXTENSIONS SHALL BE GRANTED.**" (Id.)(emphasis in original). The Quarry Defendants did not produce

a timely expert report with respect to its products liability crossclaim against the Lippmann Defendants. Plaintiff has settled her claim against the Lippmann Defendants, and plaintiff will not be presenting any expert witness testimony regarding the product liability claim. (See Doc. 386, Correspondence from Pl. counsel dated Sept. 25, 2017). Thus, the only party with a claim against the Lippmann Defendants is the Quarry Defendants, and the Quarry Defendants have presented no timely expert report with regard to the product liability claim.

The parties agree that a product liability claim must be supported by expert witness testimony. (Doc. 379, Lippmann Defs.' Supp. Br. at 5; Doc. 385, Quarry Defs.' Oppo. Br. at 3). The parties are further in agreement that the Quarry Defendants did not submit an expert witness report regarding the products liability claim by the deadline of June 15, 2015. (See Doc. 73, Order of Nov. 19, 2014). The Quarry Defendants now attempt to utilize an expert report from Mark J. Vic, Ph.D., P.E., dated September 22, 2017, more than **two years** after the expert witness report deadline and also after the filing of the instant motion for summary judgment. We find that the late submission of this expert report, on the eve of trial, is inappropriate, and we will preclude the expert report from the evidence.[3] The Quarry Defendants evidently made a strategic decision to not submit expert witness reports at the time when they were due. Over two years

---

[3] Jury selection is set for Wednesday October 10, 2017.

ago, the court ordered that the deadline would not be extended. (See Doc. 73). In light of the lateness of the Quarry Defendants expert report and the fact that the court ordered that no further extensions would be granted, it is inappropriate to allow the late submission of an expert report.

The Quarry Defendants argue that the Lippman Defendants will not be prejudiced if they have to defend against the crossclaim because they have already entered into a pro rata release with the plaintiff, and therefore, will not have to pay any more money in damages. This argument, however, does not take into account the considerable cost that would be incurred by the Lippmann Defendants in litigating the trial, a trial that will likely last several weeks. In deciding to settle the case, the Lippmann Defendants certainly took into consideration that the Quarry Defendants had not presented an expert witness report regarding liability against them and the likelihood that this lack of evidence would result in judgment being granted in their favor before the trial. To rule otherwise at this point would be prejudicial to the Lippmann Defendants.

Next, the Quarry Defendants argue that the Lippmann Defendants will not be prejudiced by the admission of their expert witness because plaintiff's expert witness will also discuss the Lippmann Defendants' liability. Thus, the evidence will be admitted regardless of whether their late expert witness testifies. Plaintiff indicates, however, she will not elicit opinions from her expert witnesses as to the

product liability claims.  Accordingly, we find the Quarry Defendants' argument unconvincing.  The evidence of the product liability claim will not be before the jury because the plaintiff will not present this evidence from her witnesses.[4]

The Quarry Defendants next argue that the very nature of a contribution claim renders summary judgment inappropriate.  Contribution applies in a tort action where two or more defendants are found to be joint tortfeasors, that is, jointly liable for the harm caused to the plaintiff.  Specifically, Pennsylvania law defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them."  42 PA. CONS. STAT. § 8322.   In such a case, the pro rata share of liability for damages for each party is determined.  If one party has paid more than its share, it can recover the overpayment from the other defendant.  Oviatt v. Automated Entrance Sys. Co., Inc., 583 A.2d 1223, 1225 (Pa. Super. Ct. 1990).

Contribution may be asserted during the original proceeding or in a separate action after a defendant has been found liable to the plaintiff.  Id. at 1226.   Defendant argues that judgment is not appropriate because they can seek contribution against the plaintiff after the trial if they are found liable.  Therefore, it is premature to grant judgment to the Lippmann Defendants.  The

---

[4] Additionally, it would be inappropriate for the Quarry Defendants to try to elicit this evidence from plaintiff's experts.

10

Quarry Defendants' position, however, does not take into consideration that the proceeding to determine liability will be the upcoming trial in this case, not in a subsequent action, because the issue is raised in their crossclaim. They do not have sufficient evidence to hold the Lippmann Defendants liable at this trial. Thus, judgment against them and in favor of the Lippmann Defendants is appropriate.

**Conclusion**

The Quarry Defendants are without admissible evidence to support their crossclaim against the Lippmann Defendants. We will thus grant the Lippmann Defendants' motion for summary judgment. An appropriate order follows.

Date: <u>September 29, 2017</u>　　　　　　　**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**